UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:98:CR:125 |
| | ) | |
| v. | ) | Honorable David W. McKeague |
| | ) | |
| ORAL MENDEZ, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a proceeding brought by a federal prisoner pursuant to 28 U.S.C. § 2255. Defendant is serving a prison sentence of 324 months, imposed by United States District Judge David W. McKeague on March 6, 2000, after defendant entered a plea of guilty to count 2 of the second superseding indictment, which charged him with conspiracy to import 500 grams or more of cocaine and a quantity of marijuana into the United States. 21 U.S.C. § 952(a). Defendant appealed as of right to the United States Court of Appeals for the Sixth Circuit, which affirmed his conviction and sentence by unpublished opinion dated October 18, 2001. *United States v. Mendez*, No. 00-1259 (6th Cir. Oct. 18, 2001). On October 2, 2002, defendant filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to section 2255. By order of reference entered October 29, 2002, Judge McKeague referred the motion to me. *See* 28 U.S.C. § 636(b)(1)(B); Rule 10, RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE DISTRICT COURTS.

Defendant's section 2255 motion, read with the required liberality, raises four grounds for relief:

(1)     The trial court erred by imposing a sentence that exceeded the statutory maximum.

(2)     The trial court erred in sentencing by including amounts of crack cocaine in determining drug quantity when count 2 of the second superseding indictment did not allege defendant's involvement with crack cocaine.  Alternatively, the government failed in its burden to prove that any of the cocaine was crack cocaine.

(3)     The court failed at the time of sentencing to resolve the issue of drug quantity as it related to defendant's alleged involvement with 500 grams of liquid cocaine smuggled into the United States from Jamaica, concerning which defendant lodged an objection.

(4)     The trial court violated the proscription in Rule 11 concerning the court's involvement in plea negotiations and rendered the plea involuntary by threatening defendant with life imprisonment.

By motion to amend filed December 3, 2004 (docket # 87), and granted on December 20, 2004 (docket # 88), defendant added a fifth issue:

Defendant's right to a trial by jury was violated by the Court's failure to apply a "beyond a reasonable doubt" standard as to factors establishing the length of Defendant's sentence, as set forth in *Blakely v. Washington*, 124 S. Ct. 1531 (2004).

In addition, petitioner asserts that both trial and appellate counsel rendered ineffective assistance, which should excuse the procedural default that would otherwise arise from petitioner's failure to raise the foregoing claims on direct appeal.  The government has filed an answer to the motion.  Upon review of the record, I conclude that petitioner's grounds are either legally meritless or plainly

-2-

refuted by the record in this case.  I therefore recommend that the section 2255 motion be denied on its merits.

## Proposed Findings of Fact

### A.    District Court Proceedings

This prosecution began with the filing of an indictment on July 30, 1998, charging Cornelius Jackson with conspiracy to distribute cocaine, crack cocaine, and marijuana.  On August 27, 1998, the grand jury returned a superseding indictment adding Oral Mendez as a party defendant and alleging that from about March 1996 to November 1997, Jackson and Mendez conspired to possess with intent to distribute and to distribute 500 grams or more of cocaine, five grams or more of cocaine base, and a quantity of marijuana.  On March 23, 1999, the grand jury returned a second superseding indictment.  The second superseding indictment set forth two counts against Oral Mendez.  Count 1 alleged that he, Calvin Wedderburn, and others engaged in a conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine, five grams or more of crack cocaine, and a quantity of marijuana from 1991 until November 1997.  Count 2 charged that Mendez and Wedderburn conspired to import into the United States from Jamaica and Panama 500 grams or more of cocaine and a quantity of marijuana from 1993 through July 1997.  Count 2 alleged that Mendez recruited women to fly to Jamaica and Panama for the purpose of obtaining cocaine and marijuana and that, under his direction, these women would smuggle illegal drugs into the United States through Miami, Chicago, Detroit, and other places, after which defendant took possession of the drugs.

On April 13, 1999, defendant was arrested in Chicago, Illinois, and made his first appearance before the United States District Court for the Northern District of Illinois. That court admitted defendant to bond and ordered him to appear in this district. Defendant made his first appearance in this district on April 19, 1999, and ultimately requested that counsel be appointed. The court appointed attorney Clinton Canady to represent defendant. He entered a plea of not guilty to both counts of the second superseding indictment on May 18, 1999.

On July 21, 1999, defendant and his counsel appeared before Magistrate Judge Hugh W. Brenneman, Jr. for purposes of entering a plea of guilty to count 2 of the second superseding indictment, pursuant to the procedures established by Local Criminal Rule 11.1.[1] The parties tendered to the court a ten-page plea agreement (docket # 41) which contained the following provisions relevant to the issues now before the court:

- Defendant agreed to enter a plea of guilty to count 2 of the second superseding indictment, charging him with conspiracy to import cocaine and marijuana. 21 U.S.C. §§ 952(a), 960(b)(2)(B). (¶ 1).

- The statutory minimum sentence on count 2 was five years' imprisonment and four years of supervised release; the statutory maximum was forty years' imprisonment. (¶¶ 3-4).

- The parties did not agree to the appropriate sentence, the appropriate sentencing guideline factors, or the appropriate criminal history. (¶¶ 7-8).

---

[1] Local Criminal Rule 11.1 empowers a magistrate judge to conduct a guilty plea colloquy, with the consent of defendant and the United States Attorney. The magistrate judge does not accept the plea of guilty, but takes the matter under advisement for ultimate review by the district judge. The rule provides a ten-day period for filing objections to the plea-taking procedure before the magistrate judge. At the time of sentencing, the district judge reviews a transcript of the plea-taking procedure and determines whether to accept or reject the plea.

•     In exchange for defendant's plea of guilty, the government would recommend a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, provided that defendant demonstrated an acceptance of responsibility up to and including the time of sentencing; the government would further recommend an additional one-level reduction for timely acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b)(2); the government would recommend sentencing at the low end of the guideline; and the government would not bring additional charges arising from defendant's criminal conduct. (¶¶ 9-10).

•     Defendant promised to cooperate fully in future drug investigations. (¶ 11).

At the outset of the plea hearing, Magistrate Judge Brenneman reviewed both charges in the second superseding indictment for defendant's benefit. (*See* Plea Transcript (PT), docket # 44, at 3-6). The court reviewed the maximum sentence, the mandatory minimum sentence, and the other penalties provided by law, including the term of supervised release. (PT 7). The court also explained the functions of the federal sentencing guidelines. (PT 7-9). Magistrate Judge Brenneman thereafter engaged in a careful plea colloquy, designed to determine the knowing and voluntary nature of the plea and to ascertain its factual basis.

The court questioned defendant at length, under oath, concerning his involvement in the importation of drugs from Jamaica and Panama, as alleged in count 2. When asked to state the reason he thought he was guilty, defendant volunteered that "I was involved in transporting marijuana and cocaine to America from Jamaica and Panama." (PT 29). He testified that the drugs were transported to Michigan, Chicago, and Miami from 1993 to July of 1997. (PT 30). When asked whether the purpose of the conspiracy was to import in excess of 500 grams of cocaine, as well as a quantity of marijuana, defendant answered, "Yes, Your Honor," but stated that he had no idea

how much beyond that quantity was actually imported.  (*Id.*).  Defendant admitted that he recruited females as couriers from in and around the Kalamazoo area and that he paid them to fly to Jamaica for the purpose of obtaining drugs.  (PT 31).  On occasion, defendant would go to Jamaica with the women, obtain both cocaine and marijuana there and then give the drugs to the women for transport into this country, but defendant was unsure of the number of times he did so.  (PT 31).  The women would hide drugs on their person in order to smuggle them into this country.  With regard to importation of cocaine from Panama, aerosol canisters were used to hide cocaine.  The court specifically asked, "This was done in Panama; is that right?," to which defendant answered "yes." (PT 32).  When the women returned to Kalamazoo, the drugs would be distributed by other people, under defendant's supervision.  (PT 33).  Defendant and Wedderburn would then be paid as a result of the distribution of the drugs.  (PT 34).

U.S. Probation Officer Mark W. Restum submitted a presentence investigation report (PSIR) under revised date November 15, 1999.  The PSIR contained a long recitation of defendant's drug-smuggling activities, which began in 1993 and typically involved using women as "mules" to secrete nine ounces of cocaine in their body cavities.  The PSIR attributed 718 grams of liquid cocaine to defendant, the only amount allegedly originating in Panama.  (¶ 40).  Defendant was involved in arranging the movement of marijuana from California to Michigan.  (¶¶ 45-46). Furthermore, he delivered or arranged for the delivery of 620.48 grams of crack cocaine, by his own admission.  (¶ 47).  The PSIR reported a base offense level of 36 under U.S.S.G. 2D1.1(c)(2). (PSIR, ¶ 57).  This calculation was based on the attribution to defendant of 127 kilograms of marijuana, 620.48 grams of cocaine base and 3.63 kilograms of cocaine hydrochloride (including the 718 grams from Panama).  The PSIR converted these quantities to 13,262 kilograms of marijuana

equivalent.  (*Id.*, 24, 47-49).  The probation officer recommended a two-level increase for defendant's possession of a dangerous weapon, U.S.S.G. 2D1.1(b)(1), and a three-level increase arising from defendant's role as a manager or supervisor.  U.S.S.G. 3B1.1(b).  (¶¶ 58-60).  This rendered an adjusted offense level of 41.  The PSIR recommended a three-point reduction for timely acceptance of responsibility (¶¶ 63-64), rendering a total offense level of 38.  The PSIR calculated defendant's criminal history points at 1, establishing a criminal history category of I.  (¶ 72).  On this basis, the guideline range for imprisonment was 235-to-293 months.  (¶ 108).

By addendum to the PSIR, the probation officer notified the court of defense counsel's unresolved objection.  Defendant objected to the inclusion of nine ounces of crack cocaine given to Robert Gray, as this information was provided by defendant himself as part of his proffer.  Counsel therefore argued that inclusion of this amount violated U.S.S.G. § 1B1.8.  That was the only unresolved defense objection noted by the report writer.

Judge David W. McKeague set the matter for sentencing on November 22, 1999.  Defendant, however, did not appear, and a warrant was issued for his arrest.  The probation officer issued an addendum to the PSIR, recommending that defendant not receive credit for acceptance of responsibility (U.S.S.G. § 3E1.1) and that his flight to avoid sentencing merited a two-point upward adjustment for obstruction of justice.  (U.S.S.G. § 3C1.1).

Defendant was apprehended in the State of Georgia in January of 2000, where he was arrested for engaging in further drug transactions.  He was returned to this district, bond was revoked, and he appeared before Judge McKeague for sentencing on March 6, 2000.  At the outset of the sentencing hearing, Judge McKeague noted that a report and recommendation recommending acceptance of the plea of guilty to count 2 had been filed by Judge Brenneman, without objection

by any party.  Defense counsel, Clinton Canady, informed the court that defendant now denied that he was involved with importing drugs from Panama, although he continued to admit his involvement with drugs from Jamaica.  (*See* Sentencing Transcript (ST) 3-5).  Defense counsel indicated that defendant was not requesting to withdraw his plea, as he continued to acknowledge his involvement with the Jamaican drugs.  (ST 6).  The court nevertheless considered counsel's statements to be a *de facto* request to withdraw the guilty plea, which the court denied, without prejudice to defendant's ability to contest his involvement with drugs from Panama for purposes of sentencing.  (ST 6-8).

With regard to guideline calculations, defense counsel noted the following objections: (1) defendant contested the inclusion of nine ounces of crack cocaine for purposes of calculating the base offense level; (2) defendant contested a previous Illinois conviction, but counsel noted that inclusion of the conviction did not change the criminal history category; (3) defendant contested the loss of a reduction for acceptance of responsibility, as well as the two-point enhancement for obstruction of justice, both arising from his decision to flee.  (ST 9-11).  The Assistant United States Attorney offered to exclude the nine ounces of crack cocaine, thereby dropping the base offense level from 36 to 34, if defendant would concede the other issues.  (ST 10-12).  The court explained to defendant the strategic choice facing him and the consequences thereof.  As explained by the court, defendant faced a nonparolable life sentence if the court decided all issues against him.  If, by contrast, defendant accepted the concession of the government, the guideline range would be 324-to-405 months.  The court further stated that, in the absence of an agreement between the parties, the court was ready to hear the evidence and resolve all sentencing issues.  (ST 12-14).

Defense counsel indicated that defendant wished to withdraw his objections to the obstruction of justice and acceptance of responsibility issues, as suggested by the government.  (ST

14).  When the court asked defendant whether he agreed, defendant launched into a long and

emotional tirade, attempting to explain away his decision to flee the jurisdiction and contending that

he did not obstruct justice and had fully cooperated with the government.  (ST 14-16).  The court

construed defendant's statements as indicating that he did not want to withdraw his objection to the

proposed enhancement for obstruction of justice and that he continued to assert entitlement to a

reduction for acceptance of responsibility.  (ST 16-17).  After further consultation with counsel,

however, defendant informed the court that he did indeed wish to withdraw these objections.  (ST

18).  In this regard, the court admonished defendant as follows:

> THE COURT:  Now, Mr. Mendez, I don't want to read later on that you
> wanted to take a position here today and that your attorney wouldn't let you.  You've
> told me what you did and you told me why you did it, and if you want to go ahead
> and still try to have your attorney convince me that what you did does not constitute
> obstruction of justice and that you are still entitled to acceptance of responsibility,
> I'm happy to make that decision one way or the other.  Are you certain that you want
> to withdraw those objections?

(ST 18-19).  Defendant did not directly respond to the court's question, but begged the court not to

give him life in jail and said he did not know how to handle the situation.  (ST 19).  The court took

defendant's statements as expressing a desire to persist in his objections.  The court then made

findings, determining that defendant's decision to flee to Georgia, where he was arrested in the

process of passing a nine-ounce brick of marijuana to another person, constituted a willful

obstruction of justice under U.S.S.G. 3C1.1 and that such conduct provided ample grounds to deny

defendant credit for acceptance of responsibility.  (ST 21-23).

      Even though defendant had not dropped his sentencing objections, as requested by

the government, the government conceded that the court should not include the nine ounces of crack

cocaine in determining the base offense level.  On the strength of that concession, the court reduced

the base offense level from 36 to 34.  (ST 23-24).  This concession by the government spared defendant a mandatory nonparolable life sentence.

Neither party lodged any other objection to the PSIR.  The court found that the base offense level of 34 should be increased by two points for possession of a dangerous weapon and three additional points for defendant's role in the offense, as recommended by the PSIR.  The two-level increase for obstruction of justice rendered a total offense level of 41.  This offense level, coupled with defendant's criminal history category I, rendered a guideline range of 324-to-405 months.  (ST 29).  After listening to allocution by all parties, Judge McKeague imposed a sentence of 324 months, at the bottom of the guideline range.  The court sentenced defendant to a four-year term of supervised release.  (ST 30-33; Judgment, docket # 60).  Count 1 was dismissed on motion of the government.  (ST 34).

B.      **Appellate Proceedings**

Defendant, represented by new counsel, appealed as of right to the United States Court of Appeals for the Sixth Circuit.  Defendant's counsel raised the following issues on appeal: (1) the trial court abused its discretion by denying defendant's motion to withdraw his guilty plea and (2) the sentencing procedure employed by the district court violated the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was issued three months after the imposition of sentence.  By unpublished opinion entered October 18, 2001, a panel of the Court of Appeals rejected both appellate claims and affirmed the conviction and sentence.  *See United States v. Mendez*, No. 00-1259 (6th Cir. Oct. 18, 2001).  With regard to Judge McKeague's decision not to allow withdrawal of the guilty plea, the Court of Appeals reviewed the trial court record, determining that defendant's

-10-

clear admission of guilt at the plea hearing, his over 200-day delay in seeking to withdraw his plea, and his admitted motivation to avoid an unanticipated sentence all weighed against defendant. (Op. 3-9, docket # 73). On this basis, the appellate court determined that Judge McKeague did not abuse his discretion in denying defendant permission to withdraw his guilty plea. With regard to the *Apprendi* claim, the court determined that defendant was sentenced within the statutory range of 5-to-40 years applicable to the amount of drugs alleged in the indictment, to which he stipulated at the plea hearing under oath. Citing its recent decision in *United States v. Harper*, 246 F.2d 520 (6th Cir. 2001), the court determined that no *Apprendi* violation occurred. (Op. 9-10).

On October 24, 2002, defendant filed the pending motion for relief pursuant to 28 U.S.C. § 2255. Defendant's motion raises as error four issues surrounding the sentencing hearing. His amendment raises a fifth sentencing claim, a violation of *Blakely*. In addition, defendant asserts ineffective assistance of trial and appellate counsel as cause for his failure to raise the foregoing issues on direct appeal.

## Discussion

In his motion for section 2255 relief, as amended, defendant raises five alleged sentencing errors, none of which was raised on direct appeal. A federal defendant may seek relief pursuant to 28 U.S.C. § 2255 for constitutional error leading up to his conviction or sentence. *See Reed v. Farley*, 512 U.S. 339, 354 (1994). A section 2255 motion does not serve as a substitute for bringing a direct criminal appeal. *Id.* Consequently, a defendant who has failed to raise an issue on direct appeal is barred from raising it in a section 2255 motion unless he first shows cause to excuse his failure to do so and actual prejudice resulting from the alleged violation. *Id.*; *see United*

-11-

*States v. Frady*, 456 U.S. 152, 167-69 (1982). Defendant must demonstrate both cause and prejudice in order to overcome the procedural bar. Failure to show one or the other will preclude review of his claim. *See Engel v. Isaac*, 456 U.S. 107, 134 n.43 (1982). To show cause, defendant must point to "some objective factor external to the defense" that prohibited him from raising these sentencing claims on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, defendant must demonstrate an error that worked to his actual and substantial disadvantage. *Frady*, 456 U.S. at 170.

Under the foregoing authorities, defendant is required to show both good cause and actual prejudice in order to overcome the procedural bar arising from his failure to raise these sentencing issues on direct appeal. The test is conjunctive, and a failure on either point is fatal to the defendant's argument; *see Murray*, 477 U.S. at 492; *United States v. Derman*, 298 F.3d 34, 45 (1st Cir. 2002). For cause, defendant argues that his appellate counsel was constitutionally ineffective for failing to raise these issues on appeal. For prejudice, defendant asserts that the outcome of the sentencing would have been different had these issues been raised. Federal courts generally examine the merits of a procedurally defaulted claim to determine whether the defendant has suffered prejudice arising from its loss, because in the absence of such prejudice, the default is not excusable. *See, e.g., United States v. Pettigrew*, 346 F.3d 1139, 1145 (D.C. Cir. 2003); *Whitney v. Horn*, 280 F.3d 240, 253 n.16 (3d Cir. 2002); *Barash v. United States*, No. 98-1985, 2000 WL 1257041, at * (6th Cir. July 11, 2000); *Quevas v. Henderson*, 801 F.2d 586, 592 (2d Cir. 1986). Adopting this approach, I have examined the potential merit of each of defendant's claims of sentencing error, and find them all to be baseless. Furthermore, I find that appellate counsel was not constitutionally ineffective for failing to assert these baseless claims on appeal.

-12-

1.      Sentencing in Excess of Statutory Maximum

Defendant pleaded guilty to count 2 of the second superseding indictment, which charged him with conspiracy to import 500 grams or more of cocaine and a quantity of marijuana into the United States.  21 U.S.C. § 952(a).  The penalty prescribed by statute for this offense was a minimum of five years and a maximum of forty years in prison, 21 U.S.C. § 960(b)(2), and defendant was so informed at the time he entered his plea of guilty.  (PT 7).  Defendant nevertheless contends that the statutory maximum sentence was only five years, and that his sentence of 324 months therefore exceeded the statutory maximum.  Defendant's argument is frivolous.

Defendant relies on decisions of the Sixth Circuit Court of Appeals, which dealt with general verdicts in "dual object" conspiracy cases.  In *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), the Court of Appeals reviewed a conviction on an indictment charging defendant with a single conspiracy to distribute both marijuana and crack cocaine.  The maximum sentence for conspiracy to distribute marijuana under the facts of the case was five years, while a conspiracy to distribute crack cocaine would yield a forty-year maximum sentence.  178 F.3d at 432.  The Court of Appeals followed the majority rule that "when the jury returns a general verdict to a charge that a conspiratorial agreement covered multiple drugs, the defendant must be sentenced as if he distributed only the drug carrying the lower penalty."  *Id.*  The reason for the rule is that a general verdict renders it impossible to determine whether the jury unanimously found that defendant conspired to distribute marijuana, or crack cocaine, or both.  In such circumstances, the court must assume that the jury "may have found only a marijuana conspiracy," and must therefore sentence the defendant accordingly.  Subsequent decisions of the Court of Appeals demonstrate that *Dale* applies only to prosecutions in which a general verdict covers a dual object conspiracy.  *See, e.g., United States v.*

-13-

*Randolph*, 230 F.3d 243, 252 (6th Cir. 2000) ("Our decision in *Dale* makes clear that if the government seeks imposition of a sentence reflecting culpability for an object of a conspiracy carrying greater than the least grave sentencing consequences, it, the government, must also seek a special verdict.").

*Dale* and its progeny have no application to the present case. Mr. Mendez was convicted by his own guilty plea, not by a general verdict. During the plea colloquy, he admitted under oath to importing "at least" 500 grams or more of cocaine. (PT 30-31). This admission subjected him to a mandatory minimum of five years in prison and a maximum of forty years in prison, pursuant to 21 U.S.C. § 960(b)(2). As defendant's actual sentence did not exceed the forty-year maximum, his first claim for section 2255 relief is meritless.

2.    Guideline Error Regarding Nature of Drugs

Defendant next contends that the trial court erred in calculating the guidelines' base offense level on the basis of crack cocaine, as opposed to cocaine hydrochloride. In a related argument, he asserts that the government failed to prove that the substance the defendant imported was indeed crack cocaine. Defendant therefore requested the court recalculate his sentence on the basis of cocaine hydrochloride.

Defendant invokes the provisions of Amendment 487 to the sentencing guidelines, which merely provides that for purposes of sentencing under U.S.S.G. § 2D1.1(c), the term "cocaine base" means "crack cocaine," a form of processed cocaine that appears in a lumpy, rocklike form. Invocation of Amendment 487 avails defendant nothing, because the presentence report (¶ 47) clearly recites that defendant was responsible for arranging to have a confederate obtain nine ounces

-14-

of cocaine base, which were seized by law enforcement.  The PSIR reported that defendant personally was responsible for a total of 620.48 grams of cocaine base.  The only objection lodged by defendant or his counsel to this finding was that the imputation of nine ounces of crack cocaine to defendant violated U.S.S.G. § 1B1.8, because the government learned about this conduct in the context of a proffer.  The pretrial conference summary order indicates that the government disclosed to defendant and his counsel the existence of evidence consisting of crack cocaine, as well as marijuana and powder cocaine, and that the government had drug analysis of these substances. (docket # 28, ¶¶ 1.C, 1.D.)  In these circumstances, the government had no burden to prove that the substance was indeed crack cocaine, unless defendant raised an objection to the findings in the PSIR. The government has no burden to establish at sentencing a factual issue which is not in dispute. *United States v. Stafford*, 258 F.3d 465, 475 (6th Cir. 2001) (government did not have burden to prove substance was crack cocaine, because defendant did not object to findings of PSIR), *cert. denied*, 535 U.S. 1006 (2002).  Defendant did not object at any time in the trial court, nor has he even alleged in his section 2255 petition that the substances seized by the government were not in fact crack cocaine.

Furthermore, defense counsel cannot be deemed ineffective for failure to raise a frivolous objection.  The government had in its possession a quantity of crack cocaine, supported by laboratory analysis.  Reasonably competent defense counsel would be expected to challenge the nature of this controlled substance only if there were some basis for doing so.  As indicated, defendant has not alleged that the substance seized by the government was not crack cocaine, nor has he alluded to any other ground that competent counsel should have raised.  A criminal defendant

-15-

is not entitled to have defense counsel raise frivolous objections on his behalf. *See United States v. Harris*, 204 F.3d 681, 682-83 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998).

3.   Failure to Resolve Objection to Attribution of Drugs From Panama

Defendant next contends that the trial court erred in sentencing him for quantities of cocaine imported from Panama, in light of defendant's assertions at the beginning of the sentencing hearing that he was not involved in importing drugs from Panama. Defendant argues that the court should have held an evidentiary hearing to resolve this objection. In denying defendant's request to withdraw his plea with regard to the importations from Panama, Judge McKeague did indicate that any issue with respect to the amount of cocaine and marijuana imported from Panama "can and will be taken up at a later part of these proceedings." (ST 7). When the time came for the lodging of any final objections before the court made findings, however, defense counsel did not assert any objection with regard to drugs originating in Panama. (*Id.* 23). Furthermore, as indicated above, defendant did not raise this issue on direct appeal.

Section 2255 relief is available only to remedy a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). The threshold question before this court is whether the sentencing judge's failure to resolve unasserted objections to the consideration of drugs originating in Panama for purposes of sentencing constitutes such a fundamental defect. The Court of Appeals routinely holds that alleged errors in interpreting or applying the federal sentencing guidelines do not meet this test and are not the appropriate subject of section 2255 relief, even though such errors would be cognizable on direct review. *See, e.g., Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Under this authority,

-16-

defendant's present complaint concerning alleged misapplication of the guidelines in reaching a base offense level is not reviewable, as a matter of law.

Furthermore, even assuming that the alleged error would somehow be deemed fundamental, defendant cannot show actual prejudice, as required by the second prong of the *Frady* test, for two reasons.  456 U.S. at 167-69.  First, the quantity of Panamanian drugs did not affect the sentence.  The only quantity of drugs attributable to defendant from Panama was 718 grams of liquid cocaine, which the PSIR counted as powder.  (¶ 40).  Defendant was sentenced on the basis of 8,159 kilograms of marijuana equivalent, resulting in a base offense level of 34.  (ST 23-24).  Even if the Panamanian cocaine (equal to 143 kilograms of marijuana equivalent) were subtracted from the 8,159 kilograms of marijuana equivalent, the result would be 8,016 kilograms, which still would result in a base offense level of 34.  U.S.S.G. § 2D1.1 (Table).  The Panamanian cocaine was therefore immaterial to sentencing.  A sentencing court is only required to resolve objections if the issue would affect the sentence.  FED. R. CRIM.. P. 32(c)(1) (pre-2002 version); *see United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003); *United States v. Parrott*, 148 F.3d 629, 634 (6th Cir. 1998).

Second, as noted by the Court of Appeals on direct review, defendant admitted at the plea hearing, under oath, that he was involved with importation of drugs from Panama.  "In fact, at his plea hearing, Defendant admitted to transporting these drugs from Panama and provided details as to how it was accomplished."  (Op. 8).  These admissions, made under oath, are binding on defendant.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  A criminal defendant will not be heard on post-trial motion to contradict statements made under oath at the plea proceeding, which are binding upon him and estop him from taking a contrary position.  *See Warner v. United States*,

-17-

975 F.2d 1207, 1212 (6th Cir. 1992); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

Therefore, had defendant insisted on pursuing his claim of innocence with regard to the importation

of drugs from Panama, his effort would undoubtedly have been summarily rejected.  For the same

reason, defendant cannot be considered to have suffered prejudice as a result of his trial counsel's

failure to pursue the issue at sentencing, as the issue was not material to the sentence and any

objection would have been rendered futile by defendant's contrary testimony at the plea hearing.[2]

       For the foregoing reasons, I conclude that defendant's request for section 2255 relief

arising from the alleged miscalculation of drug quantities for purposes of guideline sentencing

cannot form the basis for post-judgment relief.

       4.    <u>Trial Court Coercion</u>

       Defendant next asserts that the trial court coerced him into withdrawing his objections

to the PSIR by threatening him with a life sentence.  This assertion requires little discussion.  A

review of the sentencing transcript indicates that Judge McKeague's mention of a life sentence was

in the context of explaining to defendant the choice he faced and the possible consequences arising

from alternative decisions.  The transcript discloses no coercion.  In fact, as noted in the proposed

findings of fact, Judge McKeague took pains to make sure that defendant understood that the choice

was up to him.  (ST 18-19).  Ultimately, defendant refused to give the court a straight answer, and

the court construed defendant's statements as expressing a desire to persist in his objections.

Consequently, defendant never did withdraw his objections to the PSIR, and the court proceeded to

---

      [2] For the same reason, defendant's present assertion of "actual innocence" is frivolous.
Defendant admitted to investigators and then to the court under oath his extensive involvement in
illegal drug trafficking.  Apparently, defendant does not understand the meaning of the word
"innocent."

rule upon them on their merits. (ST 21-23). On this record, defendant's contention that he was coerced into withdrawing his objections represents a patent falsehood.

Giving a different spin to the same facts, defendant also asserts that Judge McKeague's statements at the sentencing hearing represent the court's improper participation in plea negotiations in violation of Rule 11. Defendant does not explain how statements made at the time of sentencing in March of 2000 could have affected the entry of a plea of guilty eight months earlier in July of 1999, before a different judge. This aspect of defendant's argument is likewise frivolous.

5.    Ineffective Assistance of Appellate Counsel

The foregoing discussion demonstrates that defendant was not prejudiced by any of the issues that he now attempts to raise, because each of them is frivolous. Therefore, he cannot overcome the procedural default arising from his failure to raise these issues on direct appeal. Additionally, defendant cannot show good cause for failure to raise these issues on direct appeal. In an effort to demonstrate cause, defendant asserts that his appellate counsel (a different lawyer from the attorney who represented him in the trial court) was constitutionally ineffective for failing to raise these issues on direct appeal. Although ineffective assistance of appellate counsel can constitute good cause for failure to raise an issue on appeal, *see Edwards v. Carpenter*, 529 U.S. 446 (2000), defendant has failed to establish ineffective assistance in the present case.

The Court of Appeals has recently emphasized that counsel's decision "not to raise an issue on appeal does not violate the Constitution unless such a decision is so suspect as to indicate that the petitioner effectively was without counsel." *Burton v. Renico*, No. 02-2489, ___ F.3d ___, 2004 WL 2777203, at * 7(6th Cir. Dec. 6, 2004). The court has identified a number of factors to be

-19-

considered in evaluating such a claim in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). The most significant of these factors touch on the apparent merit of the pretermitted issues. If the omitted issues were significant and obvious, and clearly more meritorious than those actually raised on appeal, a criminal defendant has a reasonable argument in favor of the ineffective assistance of counsel. In the present case, defendant cannot make the required showing of meritorious grounds for appeal. As discussed at length above, each of the claims now set forth in defendant's section 2255 motion is either frivolous or directly contradicted by the record. None of these issues would have had any merit, let alone more merit than the two claims that appellate counsel chose to raise on appeal. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

In summary, I find that defendant is procedurally barred from raising any of the issues set forth in his original section 2255 motion, because he failed to raise them on direct appeal. This procedural default is unexcused, because defendant cannot show good cause for the failure or actual prejudice arising therefrom.

6. *Blakely* Violation

In his amended motion for section 2255 relief, defendant seeks to raise a Sixth Amendment claim arising from the Supreme Court's recent decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Defendant asserts that his right to trial by jury was violated when the court made factual findings relevant to sentencing, rather than submitting those issues to a jury for resolution beyond a reasonable doubt. Defendant's attempt to invoke *Blakely* is meritless.

In *Blakely*, the Supreme Court invalidated under the Sixth Amendment a statute of the State of Washington that authorized the sentencing judge to impose a sentence above the standard sentencing range if the judge found aggravating factors that justified such a departure. The Supreme Court had already held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In *Blakely*, the Court extended this concept by holding that for *Apprendi* purposes the "statutory maximum" is the maximum sentence that a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 124 S. Ct. at 2537. "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Id.* (citations omitted, emphasis in original). Although the *Blakely* Court stated that the application of its holding to the federal guidelines was not a question before the Court, an avalanche of lower federal court opinions has now ensued in the months following *Blakely*, applying its rationale to the federal sentencing guidelines. *See, e.g., United States v. Booker*, 375 F.3d 508, 510 (7th Cir. 2004). The Sixth Circuit, however, has decided that *Blakely* does not apply to federal sentences. *See United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (*en banc*). *Koch* is sufficient authority for summarily dismissing defendant's fifth ground for section 2255 relief.

Assuming that *Blakely* applies to sentencing under the federal sentencing guidelines, the pivotal issue is whether defendant may rely on *Blakely* to upset his sentence, imposed before

-21-

*Blakely* was decided.  The retroactive effect of new procedural rules on collateral review in the circumstances of the present case is governed by the common-law standard set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989).  In *Teague*, the Supreme Court held that a "new rule" of criminal procedure will not be applied retroactively on collateral review of cases which have become final before the new rule is announced, unless the new rule falls under one of two exceptions:  (1) it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," 489 U.S. at 307, or (2) it is a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the proceeding."  *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (citing *Teague*, 489 U.S. at 311).[3]

The *Teague* inquiry is conducted in three steps.  *See O'Dell v. Netherland*, 521 U.S. 151, 156 (1997).  First, the date on which the defendant's conviction became final for purposes of collateral review must be determined.  *Id.*  As a general matter, a conviction becomes final for purposes of collateral attack at the conclusion of direct review.  *See United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002); *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001).  If a defendant pursued a direct appeal, his conviction becomes final for section 2255 purposes upon the expiration of the ninety-day period for the filing of a petition for *certiorari*.  *Sanchez-Ostellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004).  Under these authorities, defendant's conviction

---

[3] In determining whether *Blakely* may be applied retroactively on collateral review, this court has the benefit of the Supreme Court's recent decision in *Schriro v. Summerlin*, 124 S. Ct. 2519 (2004), decided the same day as *Blakely*.  *Schriro* addressed the question whether *Ring v. Arizona*, 536 U.S. 584 (2002), should have retroactive effect.  *Ring*, like *Blakely*, was a more specific application of the Sixth Amendment principles first enunciated in *Apprendi*.  *Schriro* will therefore be cited as authoritative throughout this Report and Recommendation.

became final on January 18, 2002, when this ninety-day period expired.  *Blakely* was not decided until June 24, 2004.

The second inquiry is whether the principle invoked by the defendant on collateral review is a "new rule" of criminal procedure.  *O'Dell*, 521 U.S. at 156.  A case announces a new procedural rule "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis added).  Although *Blakely* applies and expands the rule enunciated in *Apprendi*, it cannot be said that the result in *Blakely* was in any way dictated by *Apprendi*.  As the Seventh Circuit recently observed in *Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004), before *Blakely* was decided, every federal court of appeals had held that *Apprendi* applied only to sentencing decisions that increased the statutory maximum penalty and that it did not apply to guideline calculations made within the statutory maximum.  376 F.3d at 681 (citing *United States v. Hughes*, 369 F.3d 941, 947 (6th Cir. 2004); *United States v. Francis*, 367 F.3d 805, 820 (8th Cir. 2004); *United States v. Jardine*, 364 F.3d 1200, 1209 (10th Cir. 2004); *United States v. Alvarez*, 358 F.3d 1194, 1211-12 (9th Cir. 2004); *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003); *United States v. Patterson*, 348 F.3d 218, 228-29 (7th Cir. 2003); *United States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002); *United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir. 2001); *United States v. Webb*, 255 F.3d 890, 898 (D.C. Cir. 2001); *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001); *United States v. Caba*, 241 F.3d 98, 100 (1st Cir. 2001); and *United States v. Garcia*, 240 F.3d 180, 183-84 (2d Cir. 2001)).  *Blakely* compels a completely new understanding of the requirements of the Sixth Amendment, in that it requires for the first time that upward adjustments in a sentence based on judicial factfinding dictated by the guidelines violate the right to a jury trial.  *See Booker*, 375 F.3d at 511 ("*Blakely* dooms the guidelines insofar as they

require that sentences be based on facts found by a judge."). Without doubt, *Blakely* represents a new procedural rule applicable to sentencing in the state and federal courts.

Furthermore, it cannot be argued that the *Blakely* rule is one of substance rather than procedure. "A decision that modifies the elements of an offense is normally substantive rather than procedural." *Schriro*, 124 S. Ct. at 2524. In *Schriro*, the Supreme Court decided that the rule announced in *Ring v. Arizona* (which required juries and not judges to make findings of fact leading to the imposition of a sentence of death) was procedural, because it merely regulated the manner of determining sentence rather than altering the range of conduct that state law subjected to the death penalty. 124 S. Ct. at 2522-24. The rationale of *Schriro* applies with equal force to the present case.

If the court determines that the rule is "new," the final step in the *Teague* analysis "requires the court to determine whether the rule nonetheless falls within one of the two narrow exceptions to the *Teague* doctrine." *O'Dell*, 521 U.S. at 156-57. The first, limited exception is for new rules "forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989). That exception obviously has no application to the present case. The second exception has been described by the Supreme Court as "even more circumscribed." *O'Dell*, 521 U.S. at 157. This exception permits retroactive application of "'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *O'Dell*, 521 U.S. at 157 (quoting *Graham v. Collins*, 506 U.S. 461, 478 (1993)). "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." *Graham v. Collins*, 506 U.S. at 478 (quotation marks omitted). Again, *Schriro* is dispositive of this issue. In

-24-

*Schriro*, the Court found that *Ring v. Arizona* did not fit within the "watershed" exception, because it did not implicate the fundamental fairness and accuracy of the criminal proceeding. 124 S. Ct. at 2524.  The requirement that juries and not judges make factual findings upon which a sentence is based is not predicated upon a superior accuracy of jury factfinding, but is a result of the command of the Sixth Amendment. *Id.* at 2524-26.  This holding of *Schriro* requires rejection of any argument that *Blakely* represents a "watershed" holding within the meaning of *Teague*.

Application of *Teague* analysis leads to the firm conclusion that the *Blakely* decision may not be given retroactive effect on collateral review.

### Recommended Disposition

For the foregoing reasons, I find that the substantive claims raised in defendant's motion, as amended, filed pursuant to 28 U.S.C. § 2255 are all barred by procedural default.  I further find that his claims of ineffective assistance of counsel are meritless.  I recommend that the amended petition be denied.

Dated:   December 22, 2004                    /s/  Joseph G. Scoville
                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).